UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Jan 23 2018
U.S. DISTRICT COURT
Northern District of WV

JOSHUA F. CURREY,

    Plaintiff,

v.

CIVIL ACTION NO: 2:18-CV-9
JUDGE: Bailey

LOWE'S HOME CENTERS, LLC,

    Defendant.

## COMPLAINT

The Plaintiff, Joshua F. Currey, brings this action against Lowe's Home Centers, LLC ("Defendant") and alleges as follows:

### I. NATURE OF ACTION

1. This is a civil action brought pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* As set forth herein, Defendant violated Mr. Currey's prescriptive and proscriptive FMLA rights when it terminated his employment while he was on FMLA intermittent leave to care for his son.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a).

3. The United States District Court for the Northern District of West Virginia is a proper venue for this action under 38 U.S.C. § 4323(c)(2) because Defendant is a company that maintains a place of business in this judicial district. Additionally, venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to this action occurred in this district.

### III.  PARTIES

4. Mr. Currey was at all times relevant herein, a resident of Harrison County, West Virginia.

5. Defendant is a foreign corporation, and at all relevant times herein conducted business in Upshur County, West Virginia.

6. Upon information and belief, Defendant employed at least fifty (50) employees for 20 or more workweeks in the current or preceding calendar year, and within seventy-five (75) miles of Mr. Currey's work site.

### IV.  FACTS

7. Mr. Currey was employed by Defendant for approximately twelve (12) years until he was terminated effective January 21, 2017.

8. He worked for Defendant from 2002 through 2011, until his job was eliminated due to company restructuring.

9. In January 2014, Defendant rehired Mr. Currey in the position of Assistant Manager at Store 1805 located in Buckhannon, West Virginia.

10. During Mr. Currey's employment with Defendant, he performed his duties in a satisfactory manner and met the reasonable expectations of Defendant.

11. While Mr. Currey was employed with Defendant, he and his spouse fostered children in their home.

12. Through the foster program, Mr. Currey learned of B.C.'s story. When B.C. was just four years old, he and his siblings were removed from their family home in West Virginia. The children were seriously neglected by their parents, physically abused and, in some cases, sexually abused. The trauma that B.C. experienced as a young child significantly impacted his

ability to find stability. Over the years, B.C. had bounced between several family and foster homes, and he was eventually placed in a residential hospital facility in Virginia. His placement into the hospital facility was in large part due to the behaviors that he exhibited and his diagnoses of post-traumatic stress disorder, reactive attachment disorder, and attention-deficit hyperactivity disorder.

13. After learning of B.C.'s situation, Mr. Currey and his spouse agreed that they would take steps toward fostering B.C. in their home.

14. While B.C. was in the residential hospital, Mr. Currey traveled to Virginia on each of his designated days off from work to spend time with B.C. and his therapists. As their bond grew, B.C. was ultimately released from the hospital and placed in Mr. Currey's home when he was eight (8) years old.

15. Shortly after B.C.'s placement in Mr. Currey's home, he began to exhibit certain behaviors indicative of his disorders.

16. In light of these behaviors, Mr. Currey realized there would be times when he would need time off from work to care for B.C.

17. As such, on March 28, 2016, Mr. Currey requested intermittent FMLA leave, which Defendant approved.

18. Unfortunately, Mr. Currey was treated differently by his supervisor and Store Manager, DJ Haynes, after he requested FMLA leave. Mr. Haynes and other management gave Mr. Currey the nickname "part-timer." Even worse, Mr. Haynes and other management would refer to Mr. Currey as "part-timer" while speaking with non-management employees in Mr. Currey's presence.

19. In May of 2016, Mr. Currey informed Mr. Haynes that he intended to use his FMLA leave intermittently during June 2016 to care for B.C. after school ended for the year. In response, Mr. Haynes told Mr. Currey that he had a problem with him taking the requested leave. Mr. Haynes further told Mr. Currey that if he continued to miss work for FMLA leave, then he would handle it as a performance issue.

20. In or around July 25, 2016, Mr. Haynes transferred to another one of Defendant's stores. At which time, Chad Corely became Mr. Currey's new Store Manager.

21. Mr. Currey was encouraged with the change in management given the scrutiny that Mr. Haynes subjected him to because of his requests for and use of FMLA leave.

22. Unfortunately, Mr. Corely picked up where Mr. Haynes left off when it came to Mr. Currey's requests for and use of FMLA leave.

23. In a meeting held at or about the time Mr. Currey assumed his new position, , Mr. Corely informed Mr. Currey that Mr. Corely was aware of Mr. Currey's FMLA status and while Mr. Corely was sympathetic to B.C.'s condition, Mr. Corely's priority was to the business.

24. In early January 2017, Mr. Currey became aware that Defendant may undergo a restructuring which could affect Assistant Managers.

25. At the time, Defendant's store at which Mr. Currey worked employed five Assistant Managers, including Mr. Currey.

26. Mr. Currey believed that he was more qualified when compared to the other Assistant Managers.

27. However, on January 18, 2017, Mr. Corely informed Mr. Currey that he was being laid off from Defendant effective January 21, 2017.

28. Defendant's motivating factor for terminating Mr. Currey's employment was his FMLA status, including his requests for and use of FMLA leave.

29. Defendant acted willfully and maliciously when it unlawfully terminated Mr. Currey's employment.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the FMLA
### (Interference with FMLA Rights)

30. This paragraph incorporates by reference all of the preceding paragraphs as if they were set forth fully herein.

31. Defendant's conduct, as described above, violates the provisions of the FMLA, 29 U.S.C. §§ 2601 *et seq.*, and/or the United States Department of Labor's regulations, 29 C.F.R. §§ 825.100, *et seq.*, by interfering with Mr. Currey's attempt to exercise his FMLA rights – namely the continued use of his available FMLA leave.

32. As a direct and proximate result of Defendant's actions, Mr. Currey has suffered, and will continue to suffer, lost wages and benefits in an amount to be determined by the jury, and is entitled to damages for lost wages and benefits and liquidated damages.

33. As a direct and proximate result of Defendant's actions, Mr. Currey is entitled to damages for indignity, embarrassment, humiliation, and emotional distress in an amount to be determined by the jury.

34. Defendant's actions were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Mr. Currey entitling him to punitive damages in an amount to be determined by a jury.

35. Defendant's actions were willful and malicious and violated the FMLA entitling Mr. Currey to his attorneys' fees and costs pursuant to 29 C.F.R. § 825.400(c).

## SECOND CAUSE OF ACTION
### Violation of the FMLA
### (Discrimination/Retaliation)

36. This paragraph incorporates by reference all of the preceding paragraphs as if they were set forth fully herein.

37. Defendant's conduct, as described above, violates the provisions of the FMLA, 29 U.S.C. §§ 2601 *et seq.*, and/or the United States Department of Labor's regulations, 29 C.F.R. §§ 825.100, *et seq.*, by retaliating and/or discriminating against Mr. Currey when he was using his available leave under the FMLA.

38. As a direct and proximate result of Defendant's actions, Mr. Currey has suffered, and will continue to suffer, lost wages and benefits in an amount to be determined by the jury, and is entitled to damages for lost wages and benefits and liquidated damages.

39. As a direct and proximate result of Defendant's actions, Mr. Currey is entitled to damages for indignity, embarrassment, humiliation, and emotional distress in an amount to be determined by the jury.

40. Defendant's actions were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Mr. Currey entitling him to punitive damages in an amount to be determined by a jury.

41. Defendant's actions were willful and malicious and violated the FMLA entitling Mr. Currey to his attorneys' fees and costs pursuant to 29 C.F.R. § 825.400(c).

## VI.   PRAYER FOR RELIEF

WHEREFORE, Mr. Currey prays for the following relief:

1. That the Court award Mr. Currey damages set forth in this Complaint, including lost wages and benefits, back pay, front pay, damages for indignity, embarrassment, humiliation, annoyance, inconvenience, and emotional distress, liquidated damages, punitive damages in an amount to be determined by the jury, pre- and post- judge interest, attorneys' fees and costs, and all remedies available to Mr. Currey under the FMLA;

2. Punitive damages;

4. Injunctive relief;

5. Attorneys' fees and costs; and

6. Such further relief as this court may deem just and equitable.

## VII.   JURY TRIAL DEMAND

Mr. Currey demands a jury trial on all issues triable to a jury.

JOSHUA F. CURREY,
By Counsel

/s/Rodney A. Smith
Todd S. Bailess (WVSB #10482)
Rodney A. Smith (WVSB #9750)
**BAILESS SMITH PLLC**
120 Capitol Street
Charleston, WV 25301
Telephone: (304) 342-0550
Facsimile: (304) 344-5529
tbailess@bailesssmith.com
rsmith@bailesssmith.com